U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**2023 FEB -3  PM 5: 09**

CLERK

BY_____ *[signature]* _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA    )
           )
v.                     )    Case No. 2:21-cr-00068
           )
DENNIS MARTIN,         )
           )
Defendant.        )

## ENTRY ORDER DENYING DEFENDANT'S
## MOTION TO DISMISS THE SUPERSEDING INDICTMENT
(Doc. 57)

Pending before the court is Defendant Dennis Martin's motion to dismiss the Superseding Indictment pursuant to Fed. R. Crim. P. 12(c)(3). The Superseding Indictment charges Mr. Martin with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 53.) Mr. Martin filed the pending motion on December 23, 2022 (Doc. 57), and the government opposed the motion on January 18, 2023. (Doc. 67.) The court held a hearing on February 2, 2023, at which time it took the pending motion under advisement.

The government is represented by Assistant United States Attorneys Jonathan Ophardt and Corinne Smith. Mr. Martin is represented by Michelle Anderson Barth, Esq.

The pretrial motions deadline in this case was June 21, 2022. Mr. Martin asks the court to consider his late-filed motion to dismiss pursuant to the court's discretion under Rule 12(c)(3). Citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), he seeks dismissal of the Superseding Indictment on the grounds that it violates his Second Amendment right to keep and bear arms.

Rule 12(b)(3) requires parties to raise motions to dismiss based on a "a defect in the indictment" before trial if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Under Rule 12(c)(3), "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is

untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). "A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client" do not constitute good cause. *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003).

Mr. Martin cites the recency of the *Bruen* decision as the reason for his delay in filing the pending motion. *Bruen* was decided on June 23, 2022. Mr. Martin filed this motion on December 23, 2022. In the intervening six months, numerous district courts have considered § 922(g)(1)'s constitutionality in the wake of *Bruen*. As the basis for the motion to dismiss was "reasonably available" after *Bruen* was decided, Mr. Martin fails to establish good cause for waiting approximately six months to seek an extension of the pretrial motions deadline and challenge the validity of the Superseding Indictment on *Bruen* grounds. Absent a showing of good cause, Mr. Martin's motion is untimely and must be DENIED.

Assuming *arguendo* that Mr. Martin could demonstrate good cause under Rule 12(c)(3), the motion nonetheless fails on its merits. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND. II. In its decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *Bruen*, the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense[,]" as well as "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122. However, the right to bear arms is not unlimited.

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

2

*Id.* at 2129–30.

Under *Bruen*, courts must engage in "analogical reasoning" to compare historical regulations with "how and why the [modern] regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. Although "courts should not 'uphold every modern law that remotely resembles a historical analogue, . . . analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* (emphasis in original).

Mr. Martin's alleged possession of a firearm constitutes "keep[ing]" an "Arm" under the Second Amendment's plain text. Mr. Martin argues that notwithstanding his status as a felon, he falls within "the people" whose right "to keep and bear Arms" is protected by the Second Amendment. The *Heller* Court found that the term "the people" as it is used in six other provisions of the Constitution "unambiguously refers to all members of the political community, not an unspecified subset[,]" and thus that "a strong presumption [exists] that the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 580–81; *see also United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) ("'[T]he people' seems to have been a term of art employed in select parts of the Constitution" including the First, Second, Fourth, Ninth, and Tenth Amendments). Individuals convicted of felonies are "members of the political community" and therefore part of "the people" for the purposes of the Second Amendment.

Recognizing that "the right secured by the Second Amendment is not unlimited[,]" *Heller*, 554 U.S. at 626, the Supreme Court emphasized in *Heller* and *McDonald* that those decisions "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons[.]'" *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626). The *Bruen* Court's repeated characterization of the right guaranteed by the Second Amendment as belonging to "law-abiding citizens" is consistent with its earlier dicta in *Heller* and *McDonald*. *See Bruen*, 142 S. Ct. at 2156 (finding New York's licensing requirement unconstitutional for "prevent[ing] *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and

3

bear arms") (emphasis supplied); *id.* at 2150 (summarizing historical evidence of gun regulations and finding "none operated to prevent *law-abiding citizens* with ordinary self-defense needs from carrying arms in public for that purpose") (emphasis supplied). Federal courts have thus recognized that although individuals convicted of a felony may be part of "the people," their Second Amendment rights are not co-extensive with those of "law-abiding citizens." *See, e.g., Hamilton v. Pallozi*, 848 F.3d 614, 626 (4th Cir. 2017) ("[W]e simply hold that conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment[.]"); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) ("Prior to *Heller*, this circuit had already recognized an individual right to bear arms, and had determined that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate that right."). Mr. Martin cites no authority that supports a contrary conclusion with regard to felons.[1]

Although the Second Amendment's plain text presumptively covers Mr. Martin's conduct, the government has provided "relevantly-similar historical analogues" from the time period close to the Founding to demonstrate that "felons were not considered within the common law right to arms by the Founders, that the Founders did not intend to confer this right upon felons, and that firearm regulations forbidding those convicted of crimes from having firearms is consistent with understandings held by early Americans who adopted the Constitution." *United States v. Carrero*, 2022 WL 9348792, at *3 (D. Utah Oct. 14, 2022) (internal quotation marks omitted); *see also Campiti v. Garland*, 2023 WL 143173, at *3 (D. Conn. Jan. 10, 2023) ("The felon-in-possession ban the plaintiff

---

[1] Mr. Martin's cited authority recognizes that "being a member of 'the people' to whom the Second Amendment applies as a general matter is a *necessary* condition to enjoyment of the right to keep and bear arms, but it is not alone *sufficient*." *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022) (emphasis in original). "Even individuals who are indisputably part of 'the people,' such as dangerous felons and those suffering from mental illness, might not partake of that pre-existing right and, therefore, may be prohibited from possessing firearms without offending the Second Amendment." *Id.* at 1046; *see also United States v. Carrero*, 2022 WL 9348792, at *3 (D. Utah Oct. 14, 2022) (finding that felons are part of "the people" under the Second Amendment but holding § 922(g)(1) constitutional).

4

challenges is consistent with our historical tradition of firearm regulations."); *United States v. Rowson*, 2023 WL 431037, at \*17 (S.D.N.Y. Jan. 26, 2023) (explaining that "post-*Bruen* decisions addressing the federal felon-in-possession statute" have "uniformly up[held] that statute . . . based on the statute's historical antecedents"). The government has therefore satisfied its burden of demonstrating that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. Under the framework set forth in *Bruen*, § 922(g)(1) does not violate Mr. Martin's Second Amendment right to keep and bear arms and the Superseding Indictment is not defective.

## CONCLUSION

For the foregoing reasons, Mr. Martin's motion to dismiss the Superseding Indictment is DENIED. (Doc. 57.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _3rd_ day of February, 2023.

Christina Reiss, District Judge
United States District Court

5